UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE KHALID BIN AL-SAUD,   CASE NO. 2:12-mc-50076
a/k/a Anthony Gignac.   JUDGE GEORGE CARAM STEEH
   MAGISTRATE JUDGE PAUL KOMIVES
_____/

**REPORT AND RECOMMENDATION ON (1) KHALID BIN AL-SAUD'S MOTIONS FOR RETURN OF PROPERTY (docket #1, #13, & #22); and (2) KHALID BIN AL-SAUD'S MOTIONS TO QUASH GRAND JURY SUBPOENA (docket #7 & #8)**

I.   RECOMMENDATION: The Court should deny movant's motions for an order compelling the government to return wrongly seized documents (docket #1), for return of property (docket #13), and for protective order (docket #22).  This denial should be without prejudice to movant filing an appropriate civil action challenging the government's seizure or retention of his property, or a proper Rule 41(g) motion should a criminal proceeding against movant be commenced.  The Court should also deny the motions to quash the grand jury subpoena (docket #7 & #8).

II.   REPORT:

A.   *Procedural Background*

On October 12, 2006, movant Khalid Bin Al-Saud, formerly known as Anthony Gignac,[1] was convicted in this Court of impersonating a diplomat, 18 U.S.C. § 915, and attempted bank fraud, 18 U.S.C. §§ 2, 1344, pursuant to his guilty plea.  On April 18, 2007, he was sentenced to concurrent terms of 77 months' imprisonment.  On December 6, 2011, he was released to Monica House, a Residential Community Corrections facility, to serve the remaining six months of his sentence.  Shortly after his release to Monica House, movant secured employment with 3-D Machining (EMS

---

[1] The government refers to Al-Saud as Anthony Gignac throughout its briefs.  Movant represents that his legal name is now Al-Saud.

Solutions) in Shelby Township, owned by Gerald and Greg Bobchick. The parties present two significantly different accounts of what occurred next.

According to the Government, movant's employers learned that he had lied about his identity and background, and terminated his employment. They also became suspicious that movant was engaged in fraud, and reported their suspicions to the FBI. The Bobchicks agreed to turn over to the FBI items movant had left after his termination, including a black folder or binder that contained various documents. A search of movant's room at Monica House revealed numerous credit cards in the name Khalid Bin Al-Saud. For his part, movant contends that the Bobchicks attempted to extort money from him and from his attorneys in Florida. He also contends that he witnessed an illegal drug transaction involving the Bobchicks. On January 6, 2012, movant contacted the FBI to report his suspicions regarding the Bobchicks, and to advise them that the black folder that had been turned over to the FBI contained important documents. Movant voluntarily met with FBI agents on January 9 and January 13, 2012.

After the termination of his employment at EMS Solutions, movant was hired as a receptionist at Kopas Construction. On February 2, 2012, FBI agents personally served on movant a grand jury subpoena at Kopas Construction. The subpoena required movant to appear before a grand jury on February 21, 2012, to provide fingerprints, photographs, and handwriting samples. On February 6, 2012, movant was recommitted to the Bureau of Prisons based on this new federal investigation. Movant is no longer detained, and has not appeared before the grand jury.

This matter is currently before the Court on several motions filed by movant. On January 24, 2012, movant filed a *pro se* motion seeking return of the allegedly wrongfully seized documents. Movant's *pro se* motion argues that the documents in the black binder seized by the Government are subject to the attorney-client privilege. Relatedly, on March 14, 2012, movant filed through counsel

a motion for return of property. In this motion, movant argues that the seizure of both the documents and his personal property violates the Fourth Amendment, and that the government's seizure of the documents violates the Sixth Amendment right to counsel and the attorney-client privilege. On April 6, 2012, movant filed a motion for a protective order, seeking an order preventing the government from inspecting the documents seized from him. The government filed a combined response to these motions on April 12, 2012. Also pending before the Court are movant's motion and supplemental motion to quash the grand jury subpoena, filed on February 17 and February 22, 2012, respectively. The government filed a combined response to these motions on April 12, 2012. Movant filed a combined reply brief, addressing all of the motions, on June 5, 2012. I heard oral argument on the motions on August 28, 2012, at which time I took the matter under advisement. For the reasons that follow, the Court should deny movant's motions for return of property without prejudice to movant filing an appropriate civil action, and should deny movant's motions to quash.[2]

B.      *Motions for Return of Property*

Petitioner's motions seeking return of his property are premised on Rule 41(g) of the Federal Rules of Criminal Procedure. That rule, however, is applicable only where a criminal proceeding is in existence. Here, there is no criminal proceeding against movant involving the property seized. No criminal complaint has been filed, nor an indictment issued. It is well established that "[u]ntil

---

[2]Although the Court referred the matter to me for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A), I respectfully submit this Report and Recommendation in lieu of a determination of the matters referred by the Court. It is doubtful that a magistrate judge has jurisdiction to determine a motion for return of property under Rule 41(g). *See United States v. Callins*, No. 11-CR-3537814, at *6 (N.D. Cal. Mar. 16, 2012); *cf. Stuart v. Rech*, 603 F.3d 409, 411 (7th Cir. 2010). *But see*, *In re Search of 4330 North 35th Street, Milwaukee, Wis.*, 142 F.R.D. 161, 166 (E.D. Wis. 1992). Further, as explained above, movant's challenge to the seizure of his property is more properly viewed as a civil action, over which a magistrate judge does not have jurisdiction to issue dispositive rulings. Accordingly, I conclude that it is appropriate to issue a Report and Recommendation rather than a determination of the motions.

criminal proceedings have been initiated against the movant by the filing of an indictment or information, motions to return property seized by the government are civil equitable proceedings." *Purcell v. United States*, 908 F.2d 434, 437-38 (9th Cir. 1990) (internal quotation omitted), *cited with approval by Delta Eng'g v. United States*, 41 F.3d 259, 262 n.2 (6th Cir. 1994); *see also*, *United States v. Search of Music City Marketing, Inc.*, 212 F.3d 920, 923 (6th Cir. 2000).  Such an action is a civil proceeding falling within the Court's federal question jurisdiction under 28 U.S.C. § 1331. *See Bailey v. United States*, 508 F.3d 736, 738 (5th Cir. 2007); *Peloro v. United States*, 488 F.3d 163, 173 (3d Cir. 2007).  Although some cases implicitly suggest that a court may simply convert a Rule 41(g) motion into a civil action, the better approach is to deny the motion without prejudice to the filing of an appropriate civil action, as there are a number of prerequisites to the filing of a civil action which are not applicable to a Rule 41(g) motion filed within a pending criminal case and which have not been satisfied by movant here.

For instance, "[a] civil action is commenced by filing a complaint with the court," FED. R. CIV. P. 3, and that complaint must include "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim," and "a demand for the relief sought." FED. R. CIV. P. 8(a).  Movant's initial motion is not a complaint, and it does not contain a statement of the grounds for the Court's jurisdiction.  Further, in a civil action the defendant, here the United States, must be served a copy of the summons and complaint in accordance with Rule 4, more specifically in this case in accordance with Rule 4(I).  There is no indication that such service has been accomplished here.  And in the absence of proper service, the Court lacks personal jurisdiction over the United States.  *See Smith v. United States Internal Revenue Serv.*, No. 99-1819, 2000 WL 377777, at *2 (E.D. Pa. Mar. 29, 2000); *Humphrey v. Decker*, 173 F.R.D. 529, 531 (E.D. Wash. 1997).  Moreover, to commence a civil action a plaintiff must either pay the filing fee, *see* 28 U.S.C. §

4

1914(a), or seek pauper status, *see* 28 U.S.C. § 1915. Movant has done neither. In light of the fact that movant's action seeking return of property is properly treated as a civil action, and that none of the requisites for filing a civil action have been satisfied, the appropriate course is to deny movant's motions without prejudice to the proper filing of a civil equitable action seeking return of property. *Cf. Keszthelyi v. United States*, No. 1:05-cv-303, 2011 WL 1884007, at *10 (E.D. Tenn. May 17, 2011) (court declined to adopt government's suggesting of docketing motion as civil action because it would have allowed movant "to bypass or skip the necessary steps of paying the standard civil filing fee and effecting service of process upon the United States."); *Boyd v. United States Dep't of Justice*, 673 F. Supp. 660, 662-63 (E.D.N.Y. 1987). *See generally*, *United States v. Savage*, 99 Fed. Appx. 583, 584 (6th Cir. 2004) (where there were no criminal proceedings pending at time motion was filed, the "district court did not err when it [denied the motion and] instructed [movant] to file a separate civil action.").

C.   *Motions to Quash Subpoena*

Movant also seeks an order quashing the subpoena directing him to appear to provide a handwriting exemplar, photograph, and major case prints (fingerprints and palm prints). He contends that the subpoena is oppressive because the information sought is already in the government's possession, and because the subpoena was issued solely for the purpose of revoking his supervised release. The Court should deny movant's motions to quash.

Under Rule 17, a court "may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." FED. R. CRIM. P. 17(c)(2). However, "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority. Consequently, a grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid

5

compliance." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 300-01 (1991). A court should not interfere with a grand jury's broad investigative powers absent a compelling reason. *See In re Grand Jury Proceedings No. 92-4*, 42 F.3d 876, 878 (4th Cir. 1994); *In re Grand Jury Investigation*, 696 F.2d 449, 451 (6th Cir. 1980) (citing *United States v. Dionisio*, 410 U.S. 1, 16-18 (1973)). A motion to quash under Rule 17(c) should not be granted unless "there is a clear basis in fact and law for doing so." *United States v. Canen*, 549 F.2d 1306, 1313 (9th Cir. 1977). A subpoena may be quashed on relevancy grounds if "there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation," if the subpoena is "too indefinite," or if "compliance would be overly burdensome." *R. Enterprises*, 498 U.S. at 301.

Movant does not argue that the information sought is not relevant to the subject of the grand jury's investigation. He does argue that the subpoena is unduly broad and burdensome, but this argument is without merit. On its face, the subpoena is limited in nature and does not impose a great burden on movant. It requires only that he appear before the grand jury on a single date to provide case prints, a handwriting exemplar, and current photographs. It does not require the production of voluminous materials or otherwise require any great expenditure of time or resources on the part of movant. Movant argues that the subpoena is overbroad because the information sought by the subpoena is already in the Government's possession. Even were this contention true–a point which the Government disputes–it would not render the subpoena unduly broad or burdensome. Movant has cited, and I have found, no case holding that a grand jury subpoena is overbroad and subject to being quashed under Rule 17(c) merely because the Government may already have the information sought in its possession. *Cf. In re Rabbinical Seminary Netzach Israel Ramailis*, 450 F. Supp. 1078, 1085 (E.D.N.Y. 1978) (internal quotation omitted) ("Prior document production does not . . . render a

proper subpoena unreasonable, nor does a prior civil investigation into the same subject matter."); *In re Grand Jury Subpoena Duces Tecum Addressed to Provision Salesmen & Distrib. Union*, 203 F. Supp. 575, 582-83 (S.D.N.Y. 1961) (subpoena not unreasonable even though it sought documents subject to an earlier grand jury subpoena and consensual search conducted by the Government).

Movant also suggests that compliance with the subpoena would infringe on his Fifth Amendment privilege against self-incrimination. This argument is likewise without merit. The Supreme Court has "long held that the privilege does not protect a suspect from being compelled by the State to produce 'real or physical evidence.' Rather, the privilege 'protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature.'" *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990) (internal citation omitted) (quoting *Schmerber v. California*, 384 U.S. 757, 764, 761 (1966)). "Thus, a suspect may be compelled . . . to provide a handwriting exemplar," *Doe v. United States*, 487 U.S. 201, 210 (1988); *see also*, *Gilbert v. California*, 388 U.S. 263, 266-67 (1967)), and the Fifth Amendment "offers no protection against compulsion to submit to fingerprinting [or] photographing[.]" *Schmerber*, 384 U.S. at 764. Likewise, a subpoena requiring a person to provide a handwriting exemplar or fingerprints does not constitute a search subject to the Fourth Amendment. *See United States v. Mara*, 410 U.S. 19, 21-22 (1973) (handwriting exemplar); *United States v. Dionosio*, 410 U.S. 1, 15 (1973) (fingerprints).

Finally, movant argues that the subpoena is unduly burdensome and harassing because it was issued solely to revoke his supervised release status by manufacturing a prohibited law enforcement contact. The Government vehemently denies movant's assertion, however the Court need not wade into this dispute. Movant himself concedes that the Bobchicks reported to the FBI their suspicions that movant was engaging in illegal activities. To be sure, movant contests the Bobchicks' suspicions

7

and claims that it was they who attempted to extort money from him and engaged in an illegal drug transaction. Movant's allegations, however, do not call into question the Government's or the grand jury's ability to probe into the accusations made by the Bobchicks, allegations which provide a legitimate basis for the subpoena. Moreover, even assuming that the FBI agents or Assistant United States Attorneys involved in the matter were motivated by a desire to affect movant's supervised release status, this alone would not be sufficient to quash the subpoena. A grand jury is "an investigative body 'acting independently of either prosecuting attorney or judge.'" *Dionisio*. 410 U.S. at 16 (quoting *Stirone v. United States*, 361 U.S. 212, 218 (1960). "[I]t belongs to no branch of the institutional Government," and "is a constitutional fixture in its own right." *United States v. Williams*, 504 U.S. 36, 47 (1992) (internal quotation omitted). For this reason, a person seeking to quash a grand jury subpoena on the basis of prosecutorial abuse must show not only such abuse, but also that the grand jury has lost its independence and neutrality. *See In re Grand Jury Proceedings*, 558 F.2d 1177, 1179 (5th Cir. 1977). Movant has made no such showing here. Accordingly, the Court should deny movant's motions to quash.

D.    *Conclusion*

In view of the foregoing, the Court should deny movant's motions for an order compelling the government to return wrongly seized documents (docket #1), for return of property (docket #13), and for protective order (docket #22). This denial should be without prejudice to movant filing an appropriate civil action challenging the government's seizure or retention of his property, or a proper Rule 41(g) motion should a criminal proceeding against movant be commenced. The Court should also deny the motions to quash the grand jury subpoena (docket #7 & #8).

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:10/12/12

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on October 12, 2012.
>
> s/Eddrey Butts
> Case Manager